IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TUAN VIET CHAU, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Case No. 1:15-cv-1197 |
| ) | |
| LORETTA LYNCH, *et al.*, ) | |
|     Defendants. ) | |
| ) | |

## ORDER

The matter is before the Court on defendants' motion to dismiss plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. Plaintiff, a citizen of Vietnam, filed this action seeking review of the final decision of the United States Citizenship and Immigration Services ("USCIS") denying his application for naturalization. Defendants[1] argue that the facts alleged in the Complaint, and the facts established by other documents properly considered at the motion to dismiss stage,[2] demonstrate that plaintiff's argument fails as a matter of law.

The matter has been fully briefed and argued, and the motion is therefore ripe for disposition. For the reasons that follow, the motion to dismiss must be granted.

---

[1] Defendants are (i) Loretta Lynch, U.S. Attorney General, (ii) Jeh Johnson, Secretary of Homeland Security, (iii) Leon Rodriguez, Director of the USCIS, (iv) Sarah Taylor, District Director for the USCIS, and (v) Kimberly Zanotti, Field Office Director for the USCIS.

[2] Defendants rely, in part, on plaintiff's (i) I-360 petition for special immigrant visa, (ii) I-485 application for adjustment of status, (iii) G-325 biographical information form, and (iv) N-400 application for naturalization. These documents are all referenced in the Complaint, and plaintiff does not challenge their authenticity. Accordingly, these documents may be considered at the motion to dismiss stage. *See Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012) (a district court "may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic").

1

## I.

Plaintiff Tuan Viet Chau is a citizen of Vietnam who entered the United States in 2001 on a non-immigrant visa to work as a Buddhist monk. In September 2003, plaintiff left his position as a monk in order to marry. Shortly after his marriage, plaintiff's spouse filed an I-130 petition seeking an immigrant visa for an alien relative, which in turn allowed plaintiff to file an I-485 application for an adjustment of his status to lawful permanent resident. Approximately two months later, plaintiff's spouse initiated divorce proceedings, which became final on January 16, 2004. At some point during the divorce proceedings, plaintiff's (shortly to be former) spouse withdrew the I-130 petition she had filed for plaintiff's benefit, which ultimately resulted in the denial of plaintiff's I-485 application.

While the divorce proceedings were pending, plaintiff's employer submitted a new I-130 petition on plaintiff's behalf in order to seek a special immigrant visa for plaintiff to work as a Buddhist monk again. On this petition, plaintiff's employer indicated that plaintiff was single in two separate locations. This petition was filed the day before plaintiff's divorce became final, and it was approved by the government in March 2005, resulting in plaintiff's receipt of a special immigrant visa.

After obtaining his special immigrant visa, plaintiff, with the assistance of counsel, completed a new I-485 application for legal permanent resident status, which was filed in July 2005. In this application, plaintiff indicated that he had never applied for legal permanent resident status before despite his having filed an I-485 application in September 2003 while he was married. Additionally, plaintiff indicated on his new I-485 application that his marital status was "single" despite the fact that plaintiff was divorced and despite the existence on the form of an alternative option for marital status, namely "divorced." Importantly, plaintiff signed this I-

485 application under penalty of perjury and certified that all the information he entered on the form was true and correct. Also as part of his application for an adjustment of status, plaintiff completed, signed, and filed a G-325 biographic information form in April 2005. This form also indicated that plaintiff had no former spouses. The USCIS approved plaintiff's I-485 application in December 2005 and granted him legal permanent resident status.

In October 2010, plaintiff filed an N-400 application for naturalization. After an interview in June 2011, the USCIS issued a preliminary decision denying the application. Plaintiff pursued an administrative appeal of this denial and submitted supplemental evidence. This supplemental evidence included a letter from plaintiff's employer, Abbot Thich Thanh Dam, in which the Abbot (i) stated that plaintiff failed to disclose his marriage to the employer at the time the employer filed an I-130 petition, (ii) stated that had plaintiff continued his marriage he would have been ineligible to work as a monk, but (iii) acknowledged that had plaintiff indicated that his marriage was a mistake and professed an intention to return to monastic life the employer would still have sponsored his I-130 petition.[3] Additional supplemental evidence indicated that Buddhist monks may leave monastic life up to seven times and still return to work as a monk.

In May 2015, the USCIS issued a final decision denying plaintiff's application for naturalization. In support of its final decision, the USCIS relied, *inter alia*, on (i) plaintiff's misrepresentations regarding his marital status on his I-485 and G-325 forms, (ii) the fact that his I-130 petition was not approvable at the time of filing because plaintiff was then married, and

---

[3] The letter from Abbot Thich Thanh Dam that plaintiff submitted to the USCIS in support of his naturalization application states that "had [plaintiff] continued to be married, it would not have been possible for him to [sic] a Buddhist monk." Comp. Ex. D-I. Thus, the record reflects that a Buddhist monk may not be married.

3

(iii) his lack of compliance with relevant regulations, *e.g.,* 8 C.F.R. § 103.2(a)(2). Plaintiff initiated this action in September 2015, seeking *de novo* review of the USCIS's final decision pursuant to 8 U.S.C. § 1421(c).

## II.

Federal law provides that "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions" of federal immigration law. 8 U.S.C. § 1429. To be lawfully admitted to the United States requires that an applicant not only have lawful permanent resident status, but also "that the grant of that status was 'in substantive compliance with the immigration laws.'" *Injeti v. United States Citizenship & Immigration Servs.*, 737 F.3d 311, 316 (4th Cir. 2013) (quoting *Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010)). The burden of demonstrating this compliance is on the applicant seeking naturalization. *See id.* Here, plaintiff fails to meet this burden for three independent reasons: (i) plaintiff was not eligible for his special immigrant visa at the time he filed for the visa, (ii) plaintiff procured his legal permanent resident status by willfully misrepresenting material facts, and (iii) plaintiff violated USCIS regulations by certifying as true and correct an immigration form that contained material misrepresentations. Each of these reasons is separately addressed.

### A.

Pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(II), "any immigrant at the time of application for admission…whose visa has been issued without compliance…is inadmissible." Importantly, a petitioner must establish that he is eligible for his requested visa "at the time of filing…and must continue to be eligible through the adjudication." 8 C.F.R. § 103.2(b)(1). The present record reflects, based on evidence plaintiff submitted to the USCIS and as part of his Complaint in this

4

action, (i) that a married man is ineligible to serve as a Buddhist monk and (ii) that plaintiff was married at the time his employer petitioned for plaintiff's I-130 special immigrant visa to allow plaintiff to carry out a vocation as a Buddhist monk. Because plaintiff was married on the date his employer's I-360 petition was filed, and because a married man cannot be a Buddhist monk, plaintiff was not eligible for employment in a vocational capacity as a Buddhist monk at the time of the filing of the I-360 petition. It follows that the approval of plaintiff's I-360 petition did not comply with USCIS regulations that require eligibility for a requested visa "at the time of filing." 8 C.F.R. § 103.2(b)(1). Because plaintiff's special immigrant visa was issued out of compliance with substantive immigration law, plaintiff is "inadmissible" under 8 U.S.C. § 1182(a)(7)(A)(i)(II), and by extension ineligible for naturalization under 8 U.S.C. § 1429.

### B.

An alien is also inadmissible if he procures an immigration benefit "by fraud or willfully misrepresenting a material fact." 8 U.S.C. § 1182(a)(6)(C)(i). Fraud is not relevant here; the USCIS alleges only that plaintiff willfully misrepresented a material fact. A misrepresentation is "willful" if it is "deliberate and voluntary" such that the alien has "[k]nowledge of the falsity of the representation." *Xing Yang Yang v. Holder*, 770 F.3d 294, 303 (4th Cir. 2014). A misrepresentation is "material" if it "ha[s] a natural tendency to influence the decision[] of the [immigration officials]" or "tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded." *Injeti*, 737 F.3d at 316-17 (internal quotations omitted). Importantly, materiality does *not* require a "but for" analysis whereby the USCIS must establish that but for the misrepresentation the status adjustment would have been denied. *See id.* at 316. That is, the USCIS does not need to prove that it would have denied the application if it had known the whole truth. In other words, it

5

is irrelevant whether the misrepresentation, viewed *ex post*, resulted in an outcome different from what would have occurred had the USCIS known the full truth. Rather, materiality analysis properly focuses on whether, viewed *ex ante*, the misrepresentation "'had a natural tendency to influence' the evaluation of [the] application." *Id.* at 317.[4]

The present record reflects that plaintiff willfully misrepresented that he had no former spouses by writing "N/A"[5] in the portion of his G-325 biographic information form inquiring about "Former Husbands or Wives," which he signed and dated in April 2005, well after his divorce was finalized. Thereafter, in July 2005, plaintiff willfully misrepresented that he had no former spouses on his I-485 application, which he signed under penalty of perjury, by checking "Single" rather than "Divorced" in the "Marital Status" portion of the form. On that same I-485 form, plaintiff indicated that he had never previously sought permanent resident status in the United States, despite his having sought such status in 2003. Plaintiff does not allege that he did not know that these representations were false,[6] and a signed application is itself evidence of knowledge. *See Aoko v. Holder*, 518 F. App'x 169, 176 (4th Cir. 2013) (noting that an application bearing a "signature as well as a certification that the contents of the application [are] true and correct" constitutes "evidence bearing on…knowledge").

---

[4] Plaintiff cites *Matter of S--- and B--- C---*, 9 I. & N. Dec. 436, 438 (BIA 1960), for the proposition that "a misrepresentation is not material…if the alien would not have been denied a visa or excluded had he told the truth." Quite apart from the age and doubtful continuing authority of this decision, it does not state the controlling materiality standard in the Fourth Circuit, as *Injeti* makes clear. *See* 737 F.3d at 316-17.

[5] "N/A" is an abbreviation of "*non allocatur*," which literally translates to "it is not allowed." *See* Black's Law Dictionary 922 (5th ed. 1979). The abbreviation is used colloquially to mean "not available" or "not applicable." *See id.* For plaintiff to say that the identity of his former spouse was "not available" or "not applicable" was clearly a misrepresentation.

[6] Plaintiff concedes his knowledge in his opposition to the motion to dismiss. *See* P. Mem. Opp. (Doc. 10) at 6 ("Rev. Chau knew of his former marriage.").

The record further reflects, based on plaintiff's evidence submitted to the USCIS and as part of the Complaint in this action, that a Buddhist monk may not be married and may leave the monastic life only a limited number of times (seven) before re-ordination would no longer be permitted. Thus, knowing about former spouses "might well have resulted" in a denial had plaintiff's number of wives exceeded seven (the permissible number of times a monk may leave monastic life), and misrepresenting that plaintiff was single and never married therefore "shut off a line of inquiry which is relevant," namely whether plaintiff had exceeded the permissible number of times he could leave monastic life and remain eligible to work as a Buddhist monk. *See Injeti*, 737 F.3d at 316-17 (holding that the omission of a prior marriage was material because it would have revealed to the USCIS that the plaintiff committed bigamy, a crime of moral turpitude that renders an alien inadmissible); *cf. Al-Hiyari v. Holder*, 552 F. App'x 315, 317 (5th Cir. 2014) (concluding that marital status is material to the adjudication of a student visa application).

Moreover, plaintiff's misrepresentation that he had never previously sought legal permanent resident status is material because, had plaintiff disclosed his previous attempt to secure such status, the USCIS would have discovered that plaintiff previously sought legal permanent resident status in tandem with his then-spouse's petitioning for his classification as an immediate relative of a U.S. citizen. This would have disclosed not only plaintiff's former marriage, which is relevant standing alone for the reasons discussed *supra*, but also potentially that plaintiff was ineligible for his special immigrant visa, which was issued contrary to substantive immigration law as noted in Part II-A. Because the misrepresentation as to plaintiff's previous attempt to secure legal permanent resident status bears on plaintiff's eligibility to hold his special immigrant visa, this misrepresentation both "ha[s] a natural tendency to influence the

7

decision[] of the [immigration officials]" and "tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded." *Id*. Nor does it matter whether the USCIS would have granted the application had it known the full truth, as the materiality analysis is *ex ante* rather than *ex post*. Accordingly, plaintiff's willful misrepresentations made to procure legal permanent resident status were material, which makes plaintiff inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i), and by extension ineligible for naturalization under 8 U.S.C. § 1429.

Plaintiff's arguments to the contrary are unavailing. First, plaintiff argues that he did not make a misrepresentation because he was single at the time he applied for adjustment of status. This argument fails because the relevant misrepresentation was not that plaintiff was single at the time of filing his I-485 and G-325 forms, but that he failed to disclose his former spouse. Indeed, a "misrepresentation" is a statement that is "misleading" rather than false, so plaintiff's true answer that he is single is a misrepresentation because the answer is not the *whole* truth. *See, e.g.*, Am. Heritage Coll. Dictionary 872 (3d ed. 1993). The forms plaintiff signed clearly sought to elicit information about former spouses, and plaintiff's omission of the information sought was misleading even though plaintiff's representation that he was single was technically true. Second, plaintiff argues that any misrepresentation was not willful. This argument fails because plaintiff signed the forms bearing the misrepresentations and by his signature certified that the contents were true.[7] And third, plaintiff argues that his marital status is not material because one

---

[7] Plaintiff relies on *Ampe v. Johnson*, No. 14-cv-717, 2016 WL 247562, at *6 (D.D.C. Jan. 20, 2016), for the proposition that an applicant is only inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) if he acted with an intent to deceive. This argument is unavailing; as the Fourth Circuit has explained, a willful misrepresentation requires only "[k]nowledge of the falsity of the representation." *Xing Yang Yang*, 770 F.3d at 303. To the extent *Ampe* suggests anything to the contrary, the Fourth Circuit's statement of the law controls here. Yet, it should be noted

8

prior marriage does not preclude plaintiff from working as a Buddhist monk. This argument fails because the operative question with regard to plaintiff's religious worker visa was not whether plaintiff could at some future point return to monastic life. Rather, the relevant question at the time plaintiff filed for his visa was whether he was presently qualified for a monastic vocation. Because the evidence indicates that a man may not serve as a Buddhist monk while married, plaintiff's marital status was relevant to his eligibility for the visa he sought. Moreover, because plaintiff's adjustment of status turned on the validity of his visa, any fact that calls into question the validity of plaintiff's visa is material to the decision to grant legal permanent resident status.

### C.

Finally, an alien submitting an immigration benefit request must certify that all information in the application "is true and correct." 8 C.F.R. § 103.2(a)(2). In *Injeti*, 737 F.3d at 318 n.5, the Fourth Circuit held that this regulation requires that an application contain no material misrepresentations. Thus, regardless of willfulness, a material misrepresentation in an application for legal permanent resident status runs afoul of § 103.2(a)(2), which renders the applying alien not "legally entitled" to legal permanent resident status and therefore ineligible for naturalization. *See id.* at 318. As discussed *supra*, the number of plaintiff's former spouses is material to whether plaintiff qualifies for his special immigrant visa, as a Buddhist monk may only leave the monastic life a limited number of times before re-ordination is no longer permitted. Moreover, plaintiff's previous attempt to procure legal permanent resident status is material in that an inquiry into previous attempts to procure such status might have disclosed plaintiff's previous marriage. As such, plaintiff's misrepresentations about his lack of former

---

that *Ampe* may well be correct with respect to an allegation that an applicant procured an immigration benefit by fraud, which is not the allegation here.

spouses and his lack of previous attempts to attain legal permanent resident status have a tendency to influence the USCIS's decision with respect to plaintiff's application and shut off a relevant line of inquiry, namely whether plaintiff had exceeded the permissible number of times in which he could leave monastic life and remain eligible to work as a Buddhist monk.

### III.

For the foregoing reasons, and for good cause,

It is hereby **ORDERED** that defendants' motion to dismiss (Doc. 5) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to send a copy of this Order to all counsel of record and to place this matter among the ended causes.

Alexandria, Virginia
February 5, 2016

/s/
_____
T. S. Ellis, III
United States District Judge